UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

```
_____
                                      )
ANNEMARIE HOGAN,                      )
                                      )
    Plaintiff and Counterclaim        )
    Defendant,                        )
                                      )
    v.                                )   C.A. No. 14-340 S
                                      )
JACKSON NATIONAL LIFE INSURANCE       )
COMPANY,                              )
                                      )
    Defendant and Counterclaim        )
    Plaintiff,                        )
                                      )
    v.                                )
                                      )
ESTATE OF WILLIAM HOGAN, by and       )
through its duly appointed legal      )
representative,                       )
                                      )
    Counterclaim Defendant.           )
_____ )
```

**MEMORANDUM AND ORDER**

WILLIAM E. SMITH, Chief Judge.

Pending before the Court is Defendant and Counterclaim Plaintiff Jackson National Life Insurance Company's ("Jackson") Motion for Discharge from Liability and for Additional Interpleader Relief. (ECF No. 22.) Jackson moves the Court to dismiss it from this action with prejudice, discharge it from liability pursuant to 28 U.S.C. § 2361, and grant it reasonable attorney's fees and costs. (Id.) Plaintiff and Counterclaim Defendant Annemarie Hogan ("Ms. Hogan") assents to Jackson's

dismissal and discharge requests, but objects to its motion for fees and costs. (ECF No. 23.) For the reasons stated below, the Court GRANTS Jackson's Motion to be dismissed from this case and discharged from liability, but DENIES Jackson's request for attorney's fees and costs.

I.  Background

In the year 2000, William Hogan ("Mr. Hogan") purchased a life insurance policy (the "Policy") from Jackson with a benefit of $200,000. (Am. Compl. ¶ 3, ECF No. 1-2.) The Policy named Mr. Hogan's then spouse, Ms. Hogan, as the primary beneficiary. (Jackson Memorandum of Law in Support of Motion ("Jackson Mem.") 2, ECF No. 22-1.) At some point after purchasing the life insurance policy, Mr. and Ms. Hogan divorced. (Id.) Mr. Hogan relocated to New York, while Ms. Hogan continued to reside in Rhode Island. (Id. at 2; Am. Compl. ¶8, ECF No. 1-2.) Ms. Hogan, nevertheless, remained the primary beneficiary on the Policy for all times relevant to this action. (Jackson Mem. at 2.)

On December 23, 2013, Mr. Hogan died. (Id.) When Ms. Hogan attempted to collect the Policy proceeds, Jackson denied her claim, stating in an email from Jackson's Associate General Counsel:

> Mr. Hogan died a resident of the state of New York. New York Statute 5-1.4 provides that a divorce revokes a beneficiary designation made to a former spouse.

2

> It is our position that the statute disqualifies Ms. Hogan from receiving the policy's death benefit proceeds.
>
> We will make payment accordingly unless you present us with a court order to the contrary within 30 days of today's date.

(Hogan Obj. Ex 2, ECF No. 23-2.)  When Ms. Hogan did not present a court order within 30 days, Jackson notified her that it was going to proceed as outlined in the email, i.e., it determined that Ms. Hogan was disqualified from receiving the proceeds of the Policy.  (Id.)

After receiving Jackson's second denial letter, Ms. Hogan commenced a declaratory action in Rhode Island Superior Court, seeking, inter alia, a declaration that she was entitled to the Policy proceeds.  (Jackson Mem. 2, ECF No. 22-1; Am. Compl., ECF No. 1-2.)  Jackson removed the case to this Court, brought a counterclaim for interpleader, and joined Mr. Hogan's Estate (the "Estate") to the action.  (Jackson Mem. 2-3, ECF No. 22-1.)  Jackson also moved to deposit the Policy proceeds, plus applicable interest, into the Registry of the Court.  (Id. at 3.)  This Court granted Jackson's motion and Jackson deposited $219,377.40 with the Court on January 22, 2015.  (Id.)

Subsequently, Ms. Hogan and the Estate agreed that the Estate would not make any claims to the Policy proceeds and filed a consent stipulation with the Court stating as such.

3

(Hogan Obj. 3, ECF No. 23-1; see Stipulation, ECF No. 21.) Shortly after Ms. Hogan and the Estate filed the stipulation, Jackson brought the present motion.

II. Dismissal and Discharge from Liability

Jackson first seeks to be dismissed from this action with prejudice and discharged from liability pursuant to 28 U.S.C. § 2361. Ms. Hogan assents to both of these forms of relief. (Hogan Obj. 1, ECF No. 23.) The Estate did not respond to Jackson's motion, but has expressly assigned its interest in the Policy proceeds to Ms. Hogan. (Stipulation ¶ 2, ECF No. 21.) Accordingly, the motion as to both requests is granted without objection.

III. Attorney's Fees and Costs

Jackson also seeks to recover its attorney's fees and costs of $11,750.50 and $631.75 from the Policy proceeds. Ms. Hogan objects to this request. The parties agree that this Court "has discretion to award costs and counsel fees to the stakeholder in an interpleader action . . . whenever it is fair and equitable to do so." Sun Life Assur. Co. of Can. v. Sampson, 556 F.3d 6, 8 (1st Cir. 2009) (internal quotation marks and citation omitted). They, however, disagree whether it is fair and equitable to do so here.

Generally, courts award fees in interpleader actions to "compensate a totally disinterested stakeholder who [has] been

4

. . . subjected to conflicting claims through no fault of his own." Id. (quoting Ferber Co. v. Ondrick, 310 F.2d 462, 467 (1st Cir. 1962)). "The test for awarding fees and costs is a typical equitable one . . . similar to the standard used to determine whether interpleader relief ought to be granted – should the interpleading party be required to assume the risk of multiplicity of actions and erroneous election." Id. (quoting 7 Charles Alan Wright et al., Federal Practice and Procedure § 1719, at 682 (3d ed. 2001) ("Wright & Miller")).

The First Circuit allows insurance companies to receive fees and costs in interpleader actions. See Sun Life, 556 F.3d at 8, 10. However, insurance companies are not entitled to fees and costs as a matter of course. Id. (affirming the discretionary nature of fee and costs awards in interpleader suits); Travelers Indem. Co. v. Israel, 354 F.2d 488, 490 (2d Cir. 1965) ("We are not impressed with the notion that whenever a minor problem arises in the payment of insurance policies, insurers may, as a matter of course, transfer a part of their ordinary cost of doing business of their insureds by bringing an action for interpleader."); Minnesota Mut. Life Ins. Co. v. Gustafson, 415 F. Supp. 615, 618 (N.D. Ill. 1976) ("[A]ttorneys' fees should not be granted to the stakeholder as a matter of course in interpleader actions concerning the proceeds of insurance policies.").

5

Indeed, a number of courts, including this one, have held that courts should more closely scrutinize an insurer's request for fees and costs. See New York Life Ins. Co. v. Ortiz, No. C.A. 14-74 S, 2015 WL 5793701, at *21 (D.R.I. Sept. 30, 2015) (Smith, C.J. affirming Report and Recommendation); Am. Gen. Life Ins. Co. v. Churchill, No. CV-06-61-B-W, 2006 WL 2948086, at *1 (D. Me. Oct. 16, 2006). There are two primary reasons behind this extra scrutiny. First, insurers enter into policy disputes as an ordinary and expected course of doing business. Insurers, thus, can plan for interpleader actions as a regular business expense and work the cost of interpleader actions into their policy premiums. Chase Manhattan Bank v. Mandalay Shores Co-op. Hous. Ass'n, Inc. (In re Mandalay Shores Co-op. Hous. Ass'n, Inc.), 21 F.3d 380, 383 (11th Cir. 1994); Midland Nat'l Life Ins. Co. v. Ingersoll, No. 13-C-1081, 2014 WL 7240268, at *3 (E.D. Wis. Dec. 18, 2014); see also Aaron v. Mahl, 550 F.3d 659, 667 (7th Cir. 2008) ("[A] court may award attorneys' fees and costs to a prevailing stakeholder in an interpleader action if the costs are determined to be reasonable and the stakeholder's efforts are not part of its normal course of business.").[1]

---

[1] Jackson urges this Court to reject this so-called cost-of-business exception because a leading treatise cited in Sun Life Assur. Co. of Can. v. Sampson expresses some reservations about it. (Jackson Reply n.2, ECF No. 24.) The treatise states "the cost-of-business rationale fails to recognize that other equitable concerns should be consulted in determining whether

6

Second, insurance companies are not traditional disinterested stakeholders who come into disputed moneys through no fault of their own; they entered the insurance business and their business benefits from interpleader actions. See, e.g. Am. Gen. Life, 2006 WL 2948086, at *2 (listing examples of benefits and collecting cases); Midland Nat'l Life, 2014 WL 7240268, at *3 (Insurers are "relieved of the risk of distributing the policy benefits to the wrong claimant and the risk of becoming the target of multiple suits.").[2]

---

fees or costs are warranted."  7 Charles Alan Wright et al., Federal Practice and Procedure § 1719, at 682 (3d ed. 2001) ("Wright & Miller").  As an initial matter, the First Circuit did not adopt the treatise's interpretation of the cost-of-business exception. See Sun Life Assur. Co. of Can. v. Sampson, 556 F.3d 6, 8 (1st Cir. 2009).  Yet, even if it had, the Court uses the exception in accordance with the treatise.  Insurers are not automatically disqualified from receiving fees in interpleader actions; courts merely more closely scrutinize an insurer's request, and use the cost-of-business exception as a factor, among other equitable concerns, when deciding an insurer's fee request.

[2] Wright & Miller also disagrees with courts that deny insurers fees on the basis that they are not disinterested stakeholders.  It notes

> [i]nsofar as these decisions rest on the notion that the stakeholder benefits by being discharged, they are wrongly decided because all stakeholders benefit by being able to use interpleader and that alone does not negate the equitable considerations supporting an award of attorney fees.

Wright & Miller § 1719, at 681-82.  Again, the First Circuit has not adopted this view.  And "it does not follow that insurance companies should be treated the same as other interpleader plaintiffs."  Midland Nat'l Life Ins. Co. v. Ingersoll, No. 13-

Here, under the extra scrutiny given to insurers, equity warrants denial of Jackson's fee request. First, there is no reason to overlook that Jackson is an insurer. It ostensibly uses interpleader actions in the regular course of its business, gains a benefit from the actions, and can pass the expense of the benefit onto its policy holders. Second, the facts in this case weigh against awarding fees.

Jackson argues that, even as an insurer, it is entitled to fees because it brought the interpleader action in the face of "extreme uncertainty" surrounding the proper beneficiaries of the Policy. (Jackson Reply 4, ECF No. 24.) It claims "irrespective of its status as a life insurer, [it] would have only promoted uncertainty, if not future claims and litigation, concerning the life insurance proceeds at issue had it attempted to disburse the stake without judicial intervention." (Id.) The problem with this argument is that the "extreme uncertainty" and risk of competing claims did not initially motivate Jackson to file an interpleader action. Instead, Jackson took sides in the dispute. It denied Ms. Hogan's claim to the Policy proceeds

---

C-1081, 2014 WL 7240268, at *3 (E.D. Wis. Dec. 18, 2014). As noted above, unlike traditional interpleaders, insurance companies have a business interest in interpleader protection and can account for the costs of availing themselves to this benefit. Thus, they are different from traditional interpleaders who innocently come into control of disputed funds. This Court sees no reason not to consider this distinction in weighing whether to grant an insurer its fees and costs.

8

and indicated that it would distribute the proceeds according to its determination that she was not entitled to them. (See Hogan Obj. Ex 2, ECF No. 23-2.) Only after Ms. Hogan initiated her declaratory action did Jackson file its interpleader counterclaim. (Answer & Countercl., ECF No. 6.) While Jackson is certainly entitled to interpleader protection, it did not act as the typical disinterested interpleader entitled to its fees and costs.

The facts in Sun Life, the case on which Jackson heavily relies, support this conclusion. In Sun Life, a life insurance company tried to resolve uncertainty surrounding a policy's beneficiaries by seeking releases from the potential beneficiaries. Sun Life, 556 F.3d at 7. After the beneficiaries repeatedly failed to respond, the insurer commenced an interpleader suit. Id. Then, even after the insurer brought the action against them, the beneficiaries still waited ten months to respond to it. Id. None of these facts are present here. Jackson did not seek to resolve the dispute out of court, and did not, on its own accord, seek interpleader protection to protect its interests. It decided that Ms. Hogan was not entitled to the Policy proceeds and only sought interpleader protection after Ms. Hogan asked a court to resolve her dispute with Jackson. Based on these facts, taken together

9

with Jackson's identity as an insurer, the Court declines to exercise its discretion in awarding fees and costs.

IV. Conclusion

For the foregoing reasons, Jackson's Motion for Discharge from Liability and for Additional Interpleader Relief is GRANTED in part and DENIED in part.  Specifically, Jackson's motion to be dismissed with prejudice and for discharge from liability pursuant to 28 U.S.C. § 2361 is GRANTED; Jackson's motion for fees and costs is DENIED.

IT IS SO ORDERED.

/s/ William E. Smith
_____
William E. Smith
Chief Judge
Date:  October 30, 2015